[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14863
_____

D.C. Docket No. 1:13-cv-01254-TCB

DIANA ARIAS,

Plaintiff-Appellee,

versus

JOSEPH T. CAMERON, *et al.*,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 20, 2015)

Before WILSON, ROSENBAUM, and BLACK, Circuit Judges.

ROSENBAUM, Circuit Judge:

On the football field, a team with a weak defense may choose to emphasize its offense. The trouble is, in the end, it can be hard to win without a reliable defense.

That is much like the problem that Defendants-Appellants Joseph T. Cameron and The Dow Chemical Company ("Dow") have in this case. Plaintiff-Appellee Diana Arias sued Cameron and Dow for injuries that Cameron allegedly inflicted on Arias while Cameron was acting within the course of his employment for Dow. When Defendants sought judgment in the case on the basis that Arias had allegedly failed to timely perfect service upon them before the statute of limitations ran, Arias moved to voluntarily dismiss the case without prejudice. By doing so, Arias hoped to take advantage of Georgia law, which allows a plaintiff who originally files a case within the statute-of-limitations period to voluntarily dismiss her case and refile it within six months, thereby triggering a new period in which to timely effect service. Defendants went on the offensive, opposing Arias's motion for voluntary dismissal on the basis that a voluntary dismissal without prejudice would prejudice them by depriving them of their statute-of-limitations defense.

The district court granted Arias's motion and voluntarily dismissed the case without prejudice. Defendants now appeal.

2

But Defendants' statute-of-limitations defense is, by no means, a certain winner. So their offense—that they will suffer prejudice as the result of a voluntary dismissal without prejudice because they will lose their statute-of-limitations defense—necessarily falters since it depends on their unreliable defense.

And even if Defendants had a viable statute-of-limitations defense that would be destroyed by a voluntary dismissal without prejudice, all of the other equities in this case—which a district court should consider under Rule 41(a)(2) in determining whether to grant a motion for voluntary dismissal—favor Arias. For these reasons, we find that the district court did not abuse its discretion when it granted Arias's motion for voluntary dismissal without prejudice.

**I.**

### A.  *The Nature of the Case*

In her complaint, Arias alleged that, on March 19, 2011, she was riding her bicycle in Georgia when Defendant-Appellant Cameron, driving a rental car, failed to yield and collided with her. According to the complaint, the car that Cameron was driving was insured by Cameron's employer, Dow, and Cameron was operating the car within the course and scope of his employment. As a result of the incident, the complaint asserts, Arias suffered "great bodily injuries."

3

When the incident occurred, Cameron produced a California driver's license to the Cobb County Police Department, which cited Cameron for failure to yield under Georgia statute O.C.G.A. § 40-6-71 and issued Cameron a ticket.

On February 25, 2013, just over three weeks before the end of Georgia's two-year statutory period for filing such claims,[1] Arias filed suit in Cobb County State Court against Cameron and Dow.  She claimed that she was entitled to damages under two theories of recovery: negligence and stubborn litigiousness.

## B.  Arias's Initial Attempts at Service

Upon the filing of her complaint, Arias attempted to serve both Cameron and Dow.  With regard to Cameron, Arias stated in the proceedings below that she believed him to be a California resident, based on his production of a California driver's license at the time of the incident and based on Georgia law that generally requires all residents of the state for more than thirty days to obtain a Georgia driver's license before operating a motor vehicle in the state, *see* O.C.G.A. § 40-5-20(a).  For this reason, Arias attempted to serve Cameron with the summons and complaint pursuant to Georgia's Non-Resident Motorist Act, O.C.G.A. § 40-12-1, *et seq*. ("NRMA"), which sets forth requirements for service on those who are not residents of Georgia, as the service requirements relate to complaints involving the operation of a motor vehicle.

---

[1] In Georgia, the statute of limitations for bringing a tort action involving claims of personal injuries is two years from date that the cause of action accrued.  *See* O.C.G.A. § 9-3-33.

In an effort to comply with the NRMA, on March 13, 2013, Arias mailed the summons and complaint to the Georgia Secretary of State to obtain service on Cameron.  Arias also sent Cameron a copy of the summons and complaint by certified mail on the same date, which Cameron later received on March 23, 2013.

With respect to Dow, counsel for Arias attested in the district-court proceedings that, on February 6, 2013, he visited the Georgia Secretary of State's website to find the registered agent for Dow, but his query resulted in a showing of no agent for service of process in Georgia.  According to counsel for Arias, he did not learn until "[m]uch later" that the website was "in transition and not functioning properly."

Based on the erroneous belief that Dow lacked a corporate presence in Georgia, Arias mailed a copy of the summons and complaint to Georgia's Secretary of State on February 28, 2013, to obtain service on Dow in Delaware, its place of incorporation.  Arias also sent the summons and complaint to Dow's registered agent in Delaware via certified mail on March 13, 2013.  On that same date, Arias sent the summons and complaint to the New Castle County Sheriff's Department as well, to make service on Dow in Delaware.

On March 19, 2013, the day upon which Dow contends that the two-year statute of limitations expired under O.C.G.A. § 9-3-33, Dow received the summons and complaint that Arias sent by certified mail on March 13, 2013.  One week

5

later, on March 27, 2013, the New Castle County Sheriff's Department personally served Dow's registered agent in Delaware with the summons and complaint.

Although Arias believed that she had adequately served Dow, on April 1, 2013, Georgia's Secretary of State sent counsel for Arias a letter stating that Dow was actually registered with the Office of Georgia Secretary of State, so the Office returned the documents that Arias's counsel had sent it for service upon Dow. Alerted to the fact that Dow had a registered agent in Georgia, Arias immediately attempted to obtain personal service on Dow's agent. Towards this end, on April 4, 2013, Arias sent the summons and complaint to the Gwinnett County Sheriff's Department for service on Dow's Georgia agent. The Sheriff's Department served Dow's registered agent on April 9, 2013.

C. *Removal of the State Court Action and the Defendants' Motion to Dismiss*

As a result of Arias's service efforts, both Dow and Cameron received notice of Arias's action, and, on April 17, 2013, Dow and Cameron removed the matter to federal court pursuant to 28 U.S.C. § 1441, asserting that the district court enjoyed diversity jurisdiction over the parties under 28 U.S.C. § 1332.

One week later, on April 25, 2013, Defendants filed a motion to dismiss pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6), Fed. R. Civ. P. In the motion to dismiss, Defendants asserted that Arias had failed to timely and properly serve them, so the matter should be dismissed for improper service of process. They

further argued that dismissal should be with prejudice, since, at the time that Defendants filed their motion to dismiss, in Defendants' view, Arias's claims were time-barred under Georgia's two-year statute of limitations.

More specifically, Dow contended that Arias did not make proper service upon it until April 9, 2013, after the statute of limitations expired. As to Cameron, Defendants asserted that service on him under Georgia's NRMA was improper because Cameron claimed to have actually been a resident of Georgia at the time of the accident.[2] So Defendants argued that Arias should have served Cameron in accordance with Georgia's long-arm statute, O.C.G.A. § 9-10-91, which required Arias to personally serve Cameron in California—something that Arias had not done at that point.[3]

Cameron also contended that even if he were not considered to be a resident of Georgia at the time of the incident, the NRMA service was deficient because Arias had failed to comply with its strict requirements in that Arias allegedly had omitted required pieces of information and did not file the proper papers with the

---

[2] Despite the fact that he still apparently had no Georgia driver's license at the time of the incident, according to Cameron, he had lived in Georgia for approximately seven months and was considering staying in Georgia permanently. Cameron stated that he engaged in daily life activities such as entertaining friends at his home, had a gym membership, and received personal mail in Georgia. *Id.*

[3] Under O.C.G.A. § 9-10-94, a person of sound mind, who is of the age of majority and is a nonresident of Georgia subject to personal jurisdiction under Georgia's long-arm statute must be served either personally or by leaving copies of the summons and complaint "at [his] dwelling house or usual place of abode with some person of suitable age and discretion then residing therein," O.C.G.A. § 9-11-4(e)(7).

state court after service.[4]    Cameron also alleged that the NRMA service was untimely since he did not receive the complaint and summons by certified mail until March 23, 2013, after the statute of limitations had expired.

## D. Arias's Further Attempts to Serve Cameron

The April 24, 2013, filing of the motion to dismiss put Arias on notice that Cameron contended that he was a resident of Georgia at the time of the accident. So Arias pursued personal service on Cameron in California, pursuant to Georgia's long-arm statute—the provision that would govern service on Cameron in California if Cameron were a resident of Georgia at the time of the incident.

On April 29, 2013, Arias sent the summons and complaint to the San Bernardino's Sheriff's Office in California to accomplish service on Cameron. According to the San Bernardino Sheriff's Department, it attempted to serve Cameron on four occasions between May 4, 2013, and May 29, 2013, but it had no success. On the second attempt, the Sheriff's Department left a business card with a name and contact telephone number, requesting that Cameron call the San Bernardino Sheriff's Department, after no one answered Cameron's door. Still, it was unable to serve Cameron.

---

[4] For instance, although Arias mailed Cameron a copy of the complaint and summons, the defendants claimed that she did not include the notice of service upon the Secretary of State, as required by O.C.G.A. § 41-12-2. The defendants also contended that Arias did not "append" Cameron's return receipt, her affidavit of compliance, and the summons, process, and complaint to the other papers and file them collectively with the state court to establish that she had complied with the NRMA.

So on May 16, 2013, counsel for Arias sent Cameron's attorney a letter stating that the San Bernardino Sheriff's Department had been trying to serve Cameron but was having no success. Counsel for Arias therefore asked Cameron's counsel whether Cameron would be willing to waive service, but Cameron refused.

As a result and after the San Bernardino Sheriff's Department had made four unsuccessful service attempts on Cameron, on May 29, 2013, Arias hired a process server in California and requested that the server "stake out" Cameron's residence until accomplishing service on Cameron. Two days later, on May 31, 2013, the process server personally served Cameron with the summons and complaint under Georgia's long-arm statute.

### E. Cameron and Dow's Motion for Summary Judgment

While Arias was still attempting to serve Cameron under Georgia's long-arm statute, on May 8, 2013, Defendants filed their Answer to the complaint and re-filed their motion to dismiss as a motion for judgment on the pleadings, pursuant to Rule 12(c). Defendants continued to make essentially the same arguments concerning alleged failure to effect proper service.

Arias timely opposed the motion, arguing that service of process had been timely and proper on both Defendants. She also asserted that it would be inequitable to penalize her under the circumstances, since she had diligently pursued service of Defendants. Along with her opposition to Defendants' motion

9

for summary judgment, Arias moved for voluntary dismissal of the case without prejudice, pursuant to Rule 41(a)(2), Fed. R. Civ. P., as an alternative to the granting of summary judgment to Defendants.  She did so for the express purpose of taking advantage of Georgia law, which allows a litigant to refile a case within six months of the voluntary dismissal of the action after the expiration of the applicable statute of limitations, when the original action was filed within the applicable statute of limitations.  O.C.G.A. § 9-2-61.

Defendants opposed Arias's request for voluntary dismissal.  Among other reasons, Defendants contended that voluntarily dismissing the case would eliminate Defendants' statute-of-limitations defense, which was based on the claim of ineffective timely service of process, since Georgia law allows a plaintiff to revive her claims after the statute of limitations has already run and restart the service clock.

The district court granted Arias's motion to voluntarily dismiss her case and denied as moot Defendants' motion for summary judgment.  But the court nonetheless directed that if Arias chose to refile her claims, she must first pay Defendants' attorneys' fees and costs incurred in this action, as the district court determined those costs and fees.  Defendants now appeal the district court's voluntary dismissal of Arias's claims.

10

## II.

The decision of whether to grant a voluntary dismissal pursuant to Rule 41(a)(2), Fed. R. Civ. P., falls within the sound discretion of the district court. Therefore, we review the district court's decision to voluntarily dismiss the case for an abuse of discretion. *See Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d 1502, 1502-03 (11th Cir. 1991) (per curiam) (citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976)[5]).

## III.

Rule 41(a) of the Federal Rules of Civil Procedure governs a plaintiff's ability to dismiss an action voluntarily and without prejudice. *See* Fed. R. Civ. P. 41(a). The rule allows a plaintiff to do so without seeking leave of court, as long as the defendant has not yet filed an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A). If a defendant has made such a filing, the plaintiff must obtain permission from the court to voluntarily dismiss her case: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Such a dismissal is considered to be without prejudice unless otherwise specified by the court.

---

[5] Opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

A district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2), Fed. R. Civ. P. *Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (per curiam). Generally speaking, a motion for voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice other than the mere prospect of a second lawsuit. *Id.; Fisher,* 940 F.2d at 1502–03 (citing *Durham v. Fla. E. Coast Ry. Co.,* 385 F.2d 366, 368 (5th Cir. 1967)).

The purpose of Rule 41(a)(2) "is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 856 (11th Cir. 1986) (citation and internal quotation marks omitted). We must consider the crucial question of whether "the defendant [would] lose any substantial right by the dismissal." *Pontenberg*, 252 F.3d at 1255 (citation omitted). But, ultimately, the determination of whether to grant such a dismissal falls within the sound discretion of the district court. *Fisher,* 940 F.2d at 1503 (citing *LeCompte,* 528 F.2d at 604). While the district court "should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants," *id.*, the court should also weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate. *McCants,* 781 F.2d at 857.

12

Here, Cameron and Dow contend that the district court erred in granting Arias's motion for voluntary dismissal because the dismissal resulted in clear legal prejudice to them: the loss of their statute-of-limitations defense if Arias re-files her action in Georgia state court. We disagree that the district court abused its discretion under the circumstances of this case.

## A. Defendants' Statute-of-Limitations Defense

To explain why, we first consider the strength of Defendants' statute-of-limitations defense. If the defense lacked merit, Defendants did not even arguably suffer any cognizable prejudice as a result of the voluntary dismissal. We begin with a review of applicable Georgia law.

Although Georgia law requires a process server to effect service within five days of receipt of the complaint and summons, O.C.G.A. § 9-11-4(c)(5), it states no time limit within which a plaintiff must seek service. *Ga. Farm Bureau Mut. Ins. Co. v. Kilgore*, 462 S.E.2d 713, 715 (Ga. 1995). So, as long as service is perfected before the statute of limitations expires, "the mere time lapse between the date of filing and the date of service is not a valid basis for dismissal." *Id.* (citation and internal quotation marks omitted).

When a complaint is filed within the limitations period but service is perfected after the limitations period ends, service relates back to the time of filing "so as to avoid the limitation," as long as service is timely perfected. *Giles v. State*

13

*Farm Mut. Ins. Co.*, 765 S.E.2d 413 (Ga. Ct. App. 2014) (citation and quotation marks omitted).  Although § 9-11-4(c)(5)'s five-day safe-harbor provision applies by its language to process servers only and not to parties, service is, nevertheless, always timely perfected if a party completes it within that period.  *See id.*  If perfected service is attempted before the expiration of the statute of limitations but is not made within the five-day period and the defendant asserts insufficiency of service after the statute of limitations expires, service can still be timely perfected and relate back to the time of filing, provided that the plaintiff acts with "the greatest possible diligence to serve the defendant from that point forward."[6] *Moody v. Gilliam*, 637 S.E.2d 759, 761 (Ga. Ct. App. 2006) (citation and quotation marks omitted).

Here, Arias attempted to complete service on Dow three different ways before the statutory period ended on March 19, 2013:  on February 28, 2013, she sent a copy of the process to Georgia's Secretary of State to make service on Dow in Delaware; on March 13, 2013, by certified mail, she sent the process to Dow's registered agent in Delaware; and also on March 13, 2013, she arranged for the New Castle County Sheriff's Department to make service on Dow in Delaware.

---

[6] Service is also timely perfected if the process server makes service within five days of receipt of the summons and complaint from the clerk of court, regardless of how much time lapses between the plaintiff's filing of the action and the process server's receipt of the complaint and summons from the clerk, provided that service is accomplished within the statutory period. *See Giles*, 765 S.E.2d 413.  In this case, however, Plaintiff—not the clerk of court—provided the various process servers with process, apparently after Plaintiff had obtained it from the clerk.

14

So it is clear that Arias attempted to perfect service on Dow within the statutory period.

Arias only learned that she did not perfect service on Dow through her February and March 2013 efforts when she received the letter dated April 1, 2013, that Georgia's Secretary of State sent advising that Dow was registered with the Office of the Georgia Secretary of State. Allowing for three mailing days, *cf.* O.C.G.A. § 9-11-6(e), Arias could have been expected to receive the Secretary of State's letter—and thus notice of insufficient service—on April 4, 2013. And, the record reflects that that very day, Arias sent the summons and complaint to the Gwinnett County Sheriff's Department for service on Dow's Georgia agent. The Sheriff's Department then served Dow's registered agent on April 9, 2013—within the five-day period from its receipt of the summons and complaint for service. Because Arias immediately delivered the summons and complaint for service upon learning that her original service on Dow was insufficient, and then the process server accomplished proper service within the five-day safe-harbor period, Arias appears to have timely perfected service on Dow that relates back to the time of her filing her complaint within the limitations period.[7]

---

[7] Dow asserts, "Defendants do not concede that any of Plaintiff's service attempts were made by authorized individuals, particularly given the numerous other flaws in her service attempts." This conclusory and entirely unsupported argument cannot carry the day for Dow, in light of the fact that the record contains a notarized return of service on Dow, signed by a deputy

15

With regard to Cameron, Arias learned that her service on him was arguably insufficient when she received Defendants' motion to dismiss, which they filed on April 24, 2013—a Wednesday.  Allowing time for service under O.C.G.A. § 9-11-6(e), Arias should have taken action to effect proper service by Monday, April 29, 2013.  *See* O.C.G.A. §§ 9-11-6(a); 1-3-1(d)(3) (when the last day of the period falls on a Saturday or Sunday, the next business day following becomes the last day of the period).

The record reveals that is exactly what she did.  On April 29, 2013, Arias sent the summons and complaint to the San Bernardino's Sheriff's Office for service on Cameron in California.  Despite four attempts by the Sheriff's Office to serve Cameron between May 4, 2013, and May 29, 2013—including the Sheriff's Office's leaving of a note on Cameron's door instructing him to call, and Plaintiff's communications in May with Cameron's counsel about the service attempts—the Sheriff's Office was unable to make service on Cameron.  Arias then sought to effect service on Cameron in a third way since learning that Cameron contested Arias's original service efforts:  she hired a private process server and directed him to "stake out" Cameron's residence until Cameron was personally served.  It still took two days to accomplish service.  Under these circumstances, it appears that Cameron may have been trying to evade service.

sheriff with Gwinnett County.  Georgia law authorizes deputy sheriffs in the county where the action is brought or where the defendant is found to serve process.  *See* O.C.G.A. § 9-11-4(c)(1).

A defendant's evasion of service bears on the determination of whether a plaintiff exercised diligence in attempting to accomplish service. In *Feinour v. Ricker Co.*, 604 S.E.2d 588 (Ga. Ct. App. 2004), *overruled on different grounds by Giles*, 765 S.E.2d 413 at n.2, for example, the plaintiff filed her case on September 28, 2000, and began service attempts on the defendant on October 2, 2000. *Id.* at 590. Between October 2, 2000, and March 7, 2001, the defendant engaged in acts to evade service. *Id.* at 590-91. The plaintiff made several efforts to serve the defendant, first through one sheriff's office, then another, then through a professional process server, and last, through a court-appointed process server, finally serving him on March 7, 2001, after the statute of limitations had expired. *Id.* at 591. Although the trial court granted the defendant's motion for summary judgment based on untimely service, the appellate court reversed, concluding that where there was "evidence that [the plaintiff's] efforts to serve [the defendant] were continuous and that she exercised the greatest possible diligence in light of [the defendant's] obvious and continued attempts to evade service," summary judgment for untimely service was improper. *Id.* at 591-92.

This case is substantially similar to *Feinour*. While the *Feinour* plaintiff attempted service in four different ways over a five-month period, Arias tried three different ways to obtain service on Cameron over a 27-day period. The first method—through the San Bernardino Sheriff's Office—involved four separate

17

attempts, and, with respect to the third method, Arias instructed the process server to effectively remain at Cameron's house until service was accomplished. These efforts were comparably continuous and diligent to those of the *Feinour* plaintiff. As a result, when service was finally made on Cameron on May 31, 2013, it should have related back to the filing of the complaint before the expiration of the statute of limitations. Thus, Defendants' statute-of-limitations defense appears to lack merit.

## B.  Precedent

But even if we very charitably described Defendants' statute-of-limitations defense as potentially viable—a description that we do not endorse, the district court still did not abuse its discretion in voluntarily dismissing the case without prejudice because our precedent allowed it to do so. *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855 (11th Cir. 1986), decided nearly thirty years ago, drives the outcome of this issue.

In *McCants*, we held that, under the facts of the case, the loss of a statute-of-limitations defense alone did not necessarily constitute *per se* legal prejudice sufficient to bar a dismissal without prejudice under Rule 41. *Id.* at 859. The plaintiff in *McCants* filed a wrongful-death action under Mississippi products-liability law in an Alabama federal court, based on a jeep accident that occurred in Mississippi. *Id*. at 856. When the plaintiff originally filed suit, she did so within

the limitations period, but she sued the wrong party, A.M. General, believing it to be the manufacturer of the jeep. *Id.* When she discovered the error, the plaintiff sought leave to amend her complaint to add Ford as a defendant, since it was the actual manufacturer of the jeep. *Id.* Rather than granting the plaintiff leave to amend the complaint, and after the one-year statute of limitations had run under Alabama law, the district court dismissed the action without prejudice. *Id.* Shortly thereafter, the plaintiff filed a second suit, this time naming Ford as a defendant. *Id.*

Ford did not plead the statute of limitations in its answer but raised it in an amended answer about eight months after the initiation of the suit and a month before it filed its summary-judgment motion. *Id.* at 857. The district court denied the motion for summary judgment and, the following day, granted the plaintiff's motion for dismissal without prejudice. *Id.* The dismissal without prejudice provided the plaintiff with the opportunity to refile the action in Mississippi, which had a longer limitations period.

On appeal, Ford argued, among other things, that it had suffered legal prejudice when the case was dismissed without prejudice because it had lost its statute-of-limitations defense. *Id.* Ford further contended that the district court had abused its discretion in allowing the dismissal because it had failed to

19

acknowledge the importance of the loss of Ford's limitation defense when the court balanced the equities of the case. *Id.*

We upheld the district court's granting of the plaintiff's motion to dismiss, stating, "[T]he likelihood that a dismissal without prejudice will deny the defendant a statute of limitations defense does not constitute plain legal prejudice and hence should not alone preclude such a dismissal." *Id.* at 858. We found support for this view in our precedent—namely, *Durham v. Florida East Coast Railway Co.,* 385 F.2d 366. *Id.* We also noted that "no evidence in the record [suggested] that [McCants] or her counsel acted in bad faith in filing this action in Alabama or in filing it more than one year after the accident occurred." *Id*. at 859. Under the circumstances, we concluded that Ford could not be said to have suffered "any plain legal prejudice other than the prospect of a second lawsuit on the same set of facts." *Id*. Consequently, we determined that the district court did not abuse its discretion in allowing the dismissal without prejudice because the loss of a valid statute-of-limitations defense did not alone necessarily constitute a bar to dismissal without prejudice. *Id.*

*McCants* does not require a district court to find a lack of legal prejudice every time a defendant is potentially stripped of a statute-of-limitations defense. Rather, *McCants* and its progeny hold only that the loss of a statute-of-limitations defense alone does not amount to *per se* prejudice requiring denial of a voluntary

20

dismissal without prejudice. A district court must look to the particular facts of the case, including, among others, whether the plaintiff's counsel has acted in bad faith, and "weigh the relevant equities and do justice between the parties" when evaluating a motion for a voluntary dismissal under Rule 41(a)(2). *McCants*, 781 F.2d at 857; *Goodwin v. Reynolds*, 757 F.3d 1216, 1219 (11th Cir. 2014). Nor is it a "bar to a voluntary dismissal that the plaintiff may obtain some tactical advantage over the defendant in future litigation." *Goodwin*, 757 F.3d at 1219 (citing *McCants*, 781 F.2d at 856-57).

Here, based on our review of the underlying facts, we conclude that the district court acted well within its discretion when it granted Arias's motion for voluntary dismissal. First, the parties here do not dispute that Arias filed her lawsuit in Georgia state court *before* the two-year statute of limitations ran. Second, as explained above, Arias acted diligently in attempting to serve Cameron and Dow with the summons and complaint. Third, none of the facts of this case demonstrate bad faith on the part of Arias's counsel, a factor that should be examined when considering a motion for voluntary dismissal without prejudice. Fourth, Defendants' claimed statute-of-limitations defense is weak, at best. And, finally, the only reason that Defendants even arguably have a statute-of-limitations defense is because they removed the case to federal court. Had the case stayed in Georgia court, where Arias chose to file it, there would have been no question that

21

she would have been able to voluntarily dismiss the case and take advantage of Georgia's six-month refiling provision. So Defendants effectively "created" the very statute-of-limitations defense that they now complain that they have been "stripped" of—a defense that did not even arguably exist until they removed the case to federal court.

Moreover, although Defendants suggest that Arias should not be able to avoid the entry of summary judgment by voluntarily dismissing her action, for the reasons that we have previously discussed, it is surely not certain that summary judgment was appropriate. And, even if summary judgment were likely, this circuit has declined to adopt a bright-line rule precluding a district court from granting a Rule 41(a)(2) voluntary dismissal without prejudice when a motion for summary judgment is pending. *See Pontenberg*, 252 F.3d at 1258. As we have explained, "the mere attempt to avoid an adverse summary judgment ruling in and of itself, particularly where there is no evidence of bad faith, does not constitute plain legal prejudice." *Id.* The district court's attachment of conditions to the dismissal—requiring Arias to pay attorneys' fees and costs incurred in this litigation if she refiles—further weighs in favor of affirming the district court's voluntary dismissal of the case without prejudice.

Nor, as Defendants urge, is *McCants* inconsistent with controlling precedent in this Circuit.[8]    Defendants suggest that *McCants* conflicts with *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir. 1976), and *Exxon Corp. v. Maryland Casualty Co.*, 599 F.2d 659 (5th Cir. 1979).    We disagree.

Neither *Exxon* nor *LeCompte* considers or addresses the specific question of whether the potential loss of a defense upon voluntary dismissal without prejudice alone constitutes *per se* "prejudice" to a defendant, requiring denial of a motion for voluntary dismissal.    Rather, these cases use the term "prejudice" in a more general sense and do not involve the potential loss of a defense upon voluntary dismissal. In fact, in *Exxon*, our predecessor court did not even consider a motion for permissive voluntary dismissal under Rule 41(a)(2).    Instead, that case dealt with dismissal as of right under Rule 41(a)(1).    And, to the extent that the Court discussed prejudice in *LeCompte*, it relied on *Durham v. Florida East Coast Railway Co.*, 385 F.2d 366 (5th Cir. 1967).    *See LeCompte*, 528 F.2d at 604.

*Durham*—a case that predates both *Exxon* and *LeCompte*—is entirely consistent with *McCants*.    In *Durham*, the plaintiff sued his employer for failure to

---

[8] When circuit authority is in conflict, a panel should look to the line of authority containing the earliest case because a decision of a prior panel cannot be overturned by a later panel. *Walker v. Mortham*, 158 F.3d 1177, 1188-89 (11th Cir. 1998) (citing *Johnson v. City of Fort Lauderdale,* 126 F.3d 1372, 1380 n.10 (11th Cir. 1997); *Robinson v. Tanner,* 798 F.2d 1378, 1383 (11th Cir. 1986) (per curiam); *see also Bonner*, 661 F.2d at 1209 (holding that decisions of prior panels are binding on subsequent panels and can be overturned by the court sitting *en banc* only)).

23

provide a safe workplace. *Id*. at 367. The defendant pled contributory negligence as an affirmative defense. *Id*. When the matter was called for trial, the plaintiff contended that he had discovered new evidence and moved for leave to amend the complaint to add a new claim under the Federal Safety Appliance Act, an act under which the plaintiff may recover without regard to any contributory negligence. *Id*. The district court denied the motion for leave to amend, prompting the plaintiff to move to voluntarily dismiss the suit without prejudice. *Id.* The trial court denied the motion and called the case for trial. *Id.* When counsel announced that he could not proceed with the trial of the case, the district court dismissed the action with prejudice. *Id.* The plaintiff then appealed.

On appeal, the former Fifth Circuit emphasized that dismissing actions with prejudice was the most severe sanction and should be imposed only when a clear record of delay or contumacious conduct by the plaintiff exists. *Id.* at 368 (citation omitted). Because those circumstances did not exist in *Durham*, the Court opined that the "crucial question" in determining whether voluntary dismissal should have been granted was whether the defendant would lose any substantial right by the dismissal without prejudice requested by the plaintiff. *Id*. As the Court explained, "[D]ismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second law suit. It is no bar to dismissal that plaintiff may obtain some tactical advantage thereby." *Id*. (citation

24

and quotation marks omitted).  Although a voluntary dismissal would have resulted in the defendant's loss of its contributory-negligence defense, the Court concluded that the record did not disclose any prejudice to the defendant upon the granting of a voluntary dismissal, other than the annoyance of a second litigation on the same subject.  *Id.* at 369.  So the Court reversed the district court's dismissal with prejudice and remanded the case for dismissal of the complaint without prejudice. *Id.*

*Durham* supports our subsequent decision in *McCants*, where we concluded that the loss of a statute-of-limitations defense alone does not constitute *per se* prejudice requiring denial of a motion for voluntary dismissal.  Indeed, our decision in *McCants* cited to and relied upon *Durham*.  In short, *McCants* does not violate our prior-precedent rule, and we are bound to follow it.

We also respectfully reject Defendants' contention that *McCants* should be limited to its facts.  Defendants suggest that *McCants* should apply to only those situations where a defendant delays in raising the affirmative defense that it hopes to preserve against a voluntary dismissal.  Because Defendants here raised their statute-of-limitations defense in a motion to dismiss one week following their removal of the case to federal court, they assert that *McCants* should not apply.

But the way in which we framed the issue in *McCants* reveals that the timing of the defendant's assertion of the defense did not drive the result in the case.  As

25

we described it, the issue in *McCants* was simply "whether it constitutes an abuse of discretion for a district court to dismiss without prejudice an action that is time-barred as brought, where the purpose or effect of such dismissal is to allow the plaintiff to refile the action in a place or manner in which it is not similarly barred." 781 F.2d at 858. Nor did we limit our holding that "the loss of a valid statute of limitations defense [does not] constitute a bar to a dismissal without prejudice," *id.* at 859, to circumstances where defendants delay in raising their statute-of-limitations defense. And we decline to so restrict *McCants* today.

We recognize, as Defendants point out, that other circuits have found clear legal prejudice to exist when a Rule 41(a)(2) dismissal is granted in the face of a valid statute-of-limitations defense. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927-28 (7th Cir. 2007); *Grover ex rel. Grover v. Eli Lilly & Co.*, 33 F.3d 716, 719 (6th Cir. 1994); *Metro. Fed. Bank of Iowa F.S.B. v. W. R. Grace & Co.*, 999 F.2d 1257, 1262 (8th Cir. 1993); *Phillips v. Illinois Cent. Gulf R.R.,* 874 F.2d 984, 987 (5th Cir.1989). And we acknowledge that both the Fifth and Eighth Circuits have expressly announced their disagreement with our decision in *McCants*. *See Phillips*, 874 F.2d at 987; *Metro. Fed. Bank of Iowa*, 999 F.2d at 1263.

But we are bound by the prior-precedent rule to follow *McCants*. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001) (citation and quotation marks

26

omitted) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong."). So even if we disagreed with it, we would nonetheless be required to be faithful to it. *See id.*

We do not disagree with *McCants*, though. Rule 41(a)(2) contemplates that the district court will weigh the equities in determining how to rule on a motion for voluntary dismissal. The equities of this case—including the dubious merit of Defendants' statute-of-limitations defense, the consistent diligence of Arias, the apparent attempts by Cameron to evade service, and the fact that Defendants could not even arguably invoke their statute-of-limitations defense had they not removed the case from Arias's chosen forum court in the first place—provide a good example of why a *per se* rule prohibiting district courts from allowing dismissals without prejudice any time that a statute-of-limitations defense might possibly be lost could significantly undermine the district court's ability to balance the equities in ruling on a motion for voluntary dismissal under Rule 41(a)(2).

The fact that *McCants* does not render loss of a statute-of-limitations defense *per se* prejudice does not mean that a party that could suffer the loss of such a defense upon a voluntary dismissal without prejudice will necessarily be at the losing end of a motion for voluntary dismissal without prejudice. Rather, *McCants* allows for a motion for voluntary dismissal without prejudice to be denied if a statute-of-limitations defense could be lost, provided that consideration of all of the

27

equities in the case warrant such a conclusion. We think that this is the correct formulation of what Rule 41(a)(2) requires.

Finally, based on all of these considerations, we conclude that the district court did not abuse its discretion when it granted Arias's motion for voluntary dismissal without prejudice under Rule 41(a)(2).

## V.

In sum, we conclude that it is unlikely that Defendants had a meritorious statute-of-limitations defense in the first place. But even if they did, in view of the equities, the district court did not abuse its discretion in granting Arias's motion for voluntary dismissal without prejudice pursuant to Rule 41(a)(2). We therefore affirm the order of the district court.

**AFFIRMED**.