[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11743

_____

D.C. Docket No. 8:19-cv-00329-SCB-JSS


EMERGENCY RECOVERY, INC.,
SOLATIUM HEALTHCARE SOLUTIONS, LLC,

Plaintiffs-Appellees,

versus

BRYAN HUFNAGLE,
JOSEPH KING,

Defendants-Appellants.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 1, 2021)

Before JILL PRYOR, NEWSOM and MARCUS, Circuit Judges.

PER CURIAM:

Defendants Bryan Hufnagle and Joseph King appeal from the district court's order dismissing without prejudice this action filed by plaintiffs Emergency Recovery, Inc., and Solatium Healthcare Solutions, LLC (together, the "companies"). The district court granted the companies' motion for a voluntary dismissal without prejudice and declined to condition the dismissal on the companies' payment of expenses Hufnagle and King incurred in litigating this action. The court declined to impose this condition, finding that all the work that Hufnagle and King's attorneys performed in litigating the companies' claims would be useful in a parallel lawsuit Hufnagle and King filed against the companies. Because the district court did not explain the reason for this determination and given the undeveloped record, we cannot discern the basis for the district court's decision. Thus, we are unable to engage in meaningful appellate review and must vacate and remand.

## I.    FACTUAL BACKGROUND

Emergency Recovery, a company owned by Bobbie Celler, offers healthcare providers services related to medical billing. Hufnagle served as Emergency Recovery's chief operating officer and King served as its senior vice president of operations.

When Emergency Recovery hired the executives, they signed written employment agreements. We briefly review the terms of these agreements that are

2

relevant to the appeal. The executives agreed to work for Emergency Recovery for an initial two-year term. Their compensation consisted of a base salary and a share of Emergency Recovery's profits. During the two-year term, Emergency Recovery could terminate the executives only for "just cause." Doc. 114-3 at 20, 27.[1] In the employment agreements, the executives promised not to disclose Emergency Recovery's trade secrets and confidential materials.

About a year after the executives started working for Emergency Recovery, the company signed an agreement to sell its assets to Solatium Healthcare, another entity owned by Celler. The executives signed new employment agreements with Solatium.

Most of the terms in the executives' agreements with Solatium were similar to the terms in their contracts with Emergency Recovery. The contracts with Solatium included two notable differences. First, under the new contracts with Solatium, the executives earned higher base salaries and a larger share of the profits. Second, the executives agreed to restrictive covenants that barred them from working in the field of "third-party insurance billing and third-party insurance collection . . . for a term of 12 months" after their employment with Solatium ended. *Id.* at 39, 46.

---

[1] "Doc." numbers refer to the district court's docket entries.

Although Celler signed the agreement to transfer Emergency Recovery's assets to Solatium, the transaction never was completed.  Emergency Recovery continued to pay the executives' salaries, but it paid them based on the more generous compensation terms in their contracts with Solatium.

About a year later, the companies terminated both men.  Lawsuits followed.  The companies filed this lawsuit in federal district court against the executives.  A few days later, the executives filed their own lawsuit against the companies and Celler in Florida state court.  The parties' respective claims were as follows.

In this lawsuit, the companies alleged that the executives were terminated because they failed to maintain relationships with existing clients and to grow the business, and they disclosed the companies' trade secrets.  The companies brought misappropriation of trade secrets claims arising under Florida law and federal law as well as breach of contract and tortious interference with business relationships claims arising under Florida law.  The companies sought the return of materials containing their trade secrets, as well as actual and punitive damages.

In the state court action, the executives brought claims against the companies and Celler arising from the termination of their employment.  They requested an accounting from the companies to determine the share of the profits to which they were entitled.  They also sought a declaration that the restrictive covenants in their employment agreements with Solatium were unenforceable

4

because they never were employed by Solatium.  In addition, the executives requested a declaration that they had been terminated without just cause and thus were owed compensation and benefits for the remainder of their employment terms.  Although the companies brought no counterclaims in the state court action, they raised several affirmative defenses, including that the executives had materially breached their employment agreements.[2]

With this overview of the two actions in mind, we turn now to the proceedings in the federal court action, which culminated in the order granting the companies' motion for voluntary dismissal without prejudice.  During the discovery period, the executives filed several motions to compel, seeking to require the companies to identify their alleged trade secrets and to provide greater specificity for their damages calculations.  The district court twice granted these motions.  The court initially ordered the companies to provide more detailed discovery responses and eventually required Celler to sit for a second deposition addressing issues related to damages and the companies' trade secrets.

Also during the discovery period, Solatium filed a motion for a preliminary injunction, seeking an order that the restrictive covenants barred the executives

---

[2] Although the companies' answer in the state court action is not included in the record before us, we may take judicial notice of this pleading.  *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–52 (11th Cir. 2020); Fed. R. Evid. 201(b)(2).

from continuing to work for a competitor.  The executives opposed the motion. The district court held an evidentiary hearing on the motion.

After discovery closed, the executives filed a motion for summary judgment. They sought summary judgment on all of Solatium's claims, contending that it never owned any trade secrets or employed them.  The executives also sought summary judgment on the damages claims, asserting that the companies had no admissible evidence of their damages;[3] on the trade secrets claims, arguing that the companies had no trade secret and could not show misappropriation; and on the tortious interference claims, explaining that the companies had identified no conduct that constituted tortious interference under Florida law.

The companies received multiple extensions of time to respond to the summary judgment motion.  Rather than file a response to the dispositive motion, they moved for voluntary dismissal, requesting that the action be dismissed without prejudice.

The executives opposed the motion, advancing two arguments.  First, they argued that the district court should not award a dismissal without prejudice given how far the litigation had progressed.  Second, if the court was inclined to grant a dismissal without prejudice, they urged it to "condition dismissal on payment of

---

[3] The companies had no expert on damages and instead were relying on testimony from Celler.  The executives also filed a motion in limine to exclude this testimony.

6

Defendants' costs and attorneys' fees." Doc. 114 at 2. The executives maintained they were entitled to reimbursement because they had incurred considerable expense in defending the companies' lawsuit.

In a reply brief, the companies argued that the court should impose no conditions on the dismissal. They contended there was no need to award litigation expenses because "the work done by Defendants' attorney[s] in this case is useful towards the resolution of Defendants' second-filed parallel action in Florida state court." Doc. 117 at 2. The companies cited nothing in the record to support this assertion and offered no further explanation.

The district court granted the companies' motion, entered a dismissal without prejudice, and closed the case. The court imposed no conditions on the dismissal. It explained that it did not require the companies to pay the executives' litigation expenses because "all work performed by Defendants' attorneys in this case has been, and will continue to be, useful towards the resolution of Defendants' second-filed parallel action in Florida state court." Doc. 118 at 4. The court did not explain the basis for this conclusion, except to say that the executives "have not argued otherwise." *Id.*[4]

---

[4] When the court entered this order, there were three other motions pending: the companies' motion for a preliminary injunction, the executives' motion for summary judgment, and the executives' motion in limine. The court closed the case without addressing the merits of these motions.

7

The executives filed a motion for reconsideration. They challenged the district court's conclusion that all the work their attorneys had performed would be useful in the state court action. They pointed out that the companies had raised this argument for the first time in a reply brief and they had no opportunity to address it. The district court denied the motion for reconsideration, again concluding that all the work performed by the executives' attorneys in this case would be useful in the state court action. The executives appealed.

## II.    STANDARD OF REVIEW

We review for abuse of discretion a district court's decision to grant a voluntary dismissal without conditions. *See McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986). A district court abuses its discretion when it applies an incorrect legal standard, follows improper procedures, or makes findings of fact that are clearly erroneous. *See Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1311 (11th Cir. 2019). We also will find an abuse of discretion when "neither the district court's decision nor the record provide[s] sufficient explanation to enable meaningful appellate review." *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012); *see Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) (stating that a district court must provide an explanation for its decision such that an appeals

8

court has a "basis for judging the exercise of the district judge's discretion." (internal quotation marks omitted)).

## III.   ANALYSIS

Federal Rule of Civil Procedure 41(a) governs when a plaintiff may voluntarily dismiss an action without prejudice.  Under Rule 41(a)(1), a plaintiff may voluntarily dismiss an action without prejudice without seeking leave of court so long as the defendant has not filed either an answer or a motion for summary judgment.  Fed. R. Civ. P. 41(a)(1)(i).  Once the defendant files either an answer or a summary judgment motion, Rule 41(a)(2) applies.  This subsection permits a plaintiff to voluntarily dismiss an action "only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  Unless the order states otherwise, a Rule 41(a)(2) voluntary dismissal is without prejudice.  *Id.*

Because the executives filed answers, our focus is on Rule 41(a)(2).  The decision whether to grant a voluntary dismissal under this rule is committed to a district court's "broad equitable discretion."  *McCants*, 781 F.2d at 857.  In deciding whether to exercise its discretion, a district court must "weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate."  *Id.*

In *McCants*, we said that a district court generally should grant a motion for voluntary dismissal "unless the defendant will suffer clear legal prejudice, other

than the mere prospect of a subsequent lawsuit, as a result." *Id.* at 856–57 (emphasis omitted). The fact that the plaintiff filed a motion for voluntary dismissal after the defendant moved for summary judgment does not in and of itself establish clear legal prejudice. *Arias v. Cameron*, 776 F.3d 1262, 1273 (11th Cir. 2015).

Under Rule 41(a)(2), a district court may attach conditions to the dismissal, including requiring the plaintiff to pay some or all of the expenses that the defendant incurred in litigating the federal action. *See McCants*, 781 F.2d at 860. When deciding whether to attach such a condition, a district court should consider whether the "defendant has been put to considerable expense in preparing for trial." *Id.* If the defendant has, the court "ordinarily" should enter a dismissal without prejudice "on [the] condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation," including attorney's fees. *Id.* But when a "subsequent similar suit between the parties is contemplated," the court may limit the award to those expenses "incurred in discovering information and researching and pressing legal arguments that will not be useful in the later suit." *Id.* After identifying "how much of the work done by [the defendant] in [the] case was wasted and how much will be useful in further litigation," the court should weigh the equities to determine whether to condition the dismissal on the

plaintiff's payment of all, or a portion, of the defendant's litigation expenses. *Id.* at 860–61.

The executives raise two arguments on appeal. First, they argue that the district court abused its discretion by granting the motion for voluntary dismissal without prejudice. Second, they argue that even if the district court did not abuse its discretion by granting a voluntary dismissal without prejudice, it abused its discretion by declining to condition the dismissal on the companies' payment of at least a portion of the executives' attorney's fees. We consider each argument in turn.

As to the first argument, we cannot say that the district court abused its considerable discretion in deciding to grant a dismissal without prejudice. Contrary to the executives' argument, there is no bright-line rule that precludes a district court from granting a plaintiff's motion for a voluntary dismissal without prejudice when the defendant has a summary judgment motion pending. *See Arias*, 776 F.3d at 1273.

The executives nonetheless argue that the district court abused its discretion because in cases with similar facts we have affirmed district court orders denying motions for voluntary dismissal without prejudice. *See, e.g.*, *Fisher v. P.R. Marine Mgmt., Inc.*, 940 F.2d 1502 (11th Cir. 1991). But the fact that we have affirmed district court orders denying motions for voluntary dismissal without prejudice in

similar situations does not mean that a district court abuses its discretion when it grants such a motion. After all, the abuse of discretion standard contemplates that a district judge has a "zone of choice within which" she "may go either way in granting or denying the motion." *See Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1259 n.5 (11th Cir. 2001).

We now turn to the executives' second argument: that the district court abused its discretion when it refused to condition the dismissal on the companies' payment of expenses that the executives incurred in litigating this action. There is no dispute that the executives incurred considerable expenses, approximately $200,000, in litigating this case. Because there was a similar lawsuit pending among the same parties, in deciding whether to impose a payment-of-expenses condition, the district court had to consider whether the executives' litigation expenses were for work that might be useful in the state court action. *See McCants*, 781 F.2d at 860–61.

The district court purported to determine that all of the work the executives' attorneys performed in this case would be useful in the state court litigation. The court stated, "Plaintiffs correctly argue that all work performed by Defendants' attorneys in this case has been, and will continue to be, useful towards the resolution of Defendants' second-filed parallel action in Florida state court," and noted that the executives "ha[d] not argued otherwise." Doc. 118 at 4. The court's

order denying the motion for reconsideration consisted of a single-sentence minute entry that relied on the companies' response to the motion to find, once again, that the work performed by the executives' attorneys would be useful in the state court litigation.

Beyond these conclusory statements, the district court offered no explanation of what it reviewed or how it made this determination. Without any such explanation, we are unable to engage in meaningful appellate review of the district court's decision and must remand for the district court to explain it. *See Friends of the Everglades*, 678 F.3d at 1201.[5]

Sometimes when a district court fails to explain its reasoning, we nevertheless are able to engage in meaningful review because we can infer from the record the basis for the court's decision. *See United States v. $242,484.00*, 389 F.3d 1149, 1154 (11th Cir. 2004). But we cannot do so in this case because the record did not include evidence from which the district court could determine that all the work performed in the federal litigation would be useful in the state

---

[5] The order could be construed as saying that the court determined all the work that the executives' attorneys performed in the federal litigation would be useful in the state court litigation because the executives had not argued otherwise. But because the companies argued for the first time in their reply brief that no expenses should be awarded because all the work would be useful in the state court litigation and the district court granted the motion for a voluntary dismissal just two days later, without giving the executives any opportunity to respond, the executives could not have "argued otherwise." Under these circumstances, the district court could not, without more, treat the question of whether all the work would be useful in the state court litigation as undisputed.

13

court litigation.  Indeed, the record contains only minimal information about the state court proceedings.  And it contains no time records or other information from the executives' attorneys detailing the work they performed in defending the federal lawsuit.  In the absence of a developed record, we cannot discern the basis for the district court's decision that *all* the work the executives' attorneys performed to defend this action would be useful in the state court litigation.

The record does reflect that *some* of the work the executives' attorneys performed in this case would be useful in the state court action.  In this action, the companies claimed, among other things, that the executives had breached their employment contracts.  The same question is at issue in the state court lawsuit.  The executives alleged in their complaint that they were entitled to compensation for the remainder of their employment terms because they had not breached their employment contracts and were terminated without just cause.[6]

But that there is some overlap is not enough to affirm the district court's determination that all the work the executives' attorneys performed would be useful in the state court action because this case included more than just the companies' breach of contract claims.  The companies also brought tortious interference with business relations claims, and Solatium filed a motion for a

---

[6] The question of whether the executives breached their employment contracts is at issue in the state court action for another reason as well:  the companies raised their alleged breach as an affirmative defense.

14

preliminary injunction to bar Hufnagle and King from continuing in their new jobs. From the limited record before us, we cannot discern the basis for the district court's determination that work the executives' attorneys undertook to defend against the tortious interference claims or oppose the motion for preliminary injunction would be useful in the state court action.

We therefore vacate the order imposing no conditions on the dismissal and remand for further proceedings. On remand, the district court should address what portion of the work performed by the executives' attorneys in the federal litigation will be useful in the state court litigation, explaining the basis for its decision. After deciding this question, the district court should weigh the equities and decide whether to condition the dismissal on the companies' payment of these expenses. *See McCants*, 781 F.2d at 860–61.

## IV.    CONCLUSION

For the reasons set forth above, we vacate the district court's order granting the motion for a voluntary dismissal without prejudice and remand for further proceedings.

**VACATED** and **REMANDED.**