[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-14429
Non-Argument Calendar

————————————————

D.C. Docket No. 1:16-cv-01164-AT

THAIS ELAINE DANIELS,
as administrator of the estate of Milton Daniels,

Plaintiff - Appellant,

versus

LLOYDSTONE JACOBS,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(October 16, 2018)

Before WILSON, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Thais Elaine Daniels, as administrator of the estate of Milton Daniels ("Daniels"), appeals the district court's grant of summary judgment in favor of Defendant Lloydstone Jacobs in Plaintiff's action brought under 42 U.S.C. § 1983. Plaintiff asserts that the district court erred in concluding that the facts, viewed in the light most favorable to Plaintiff, failed to demonstrate that Defendant was deliberately indifferent to Daniel's serious medical needs in violation of the Eighth and Fourteenth Amendments while he was incarcerated at the Gwinnett County Detention Center ("GCDC"). After careful review, we affirm entry of summary judgment.

## I.    BACKGROUND

### A.    Factual Background

From 2012 to 2014, Daniels was a pretrial detainee at the GCDC. Defendant is a doctor that served as the Medical Director at GCDC during Daniels's incarceration. The medical staff at GCDC provided Daniels treatment for medical conditions that both preexisted and arose during his confinement. Bloodwork obtained over the course of those treatments eventually led Defendant to diagnosis Daniels with diabetes. Daniels's belief that Defendant should have diagnosed his

2

diabetes sooner forms the basis for this lawsuit asserting that Defendant was deliberately indifferent to Daniels's serious medical condition.[1]

The parties generally agree on the staffing, duties, and procedures typically followed by the GCDC medical team.  During the first part of Daniels's confinement, he received care from two nurse practitioners.  The nurse practitioners assisted Defendant in caring for detainees.  The nurse practitioners "were qualified to provide medical treatment to patients."  The nurse practitioners "could order diagnostic testing; make diagnoses; and prescribe medications."  Defendant "generally cared for patients housed in the infirmary [and] handled the more acute or complicated chronic care issues," while the nurse practitioners "handled routine chronic care and sick call appointments."  Defendant asserts that "[i]t was within the scope of the nurse practitioners' practice to diagnose and treat diabetes and chronic pain."

The GCDC nursing staff triages medical requests from inmates for treatment.  The nursing staff sorts inmate medical requests by urgency, and then either "determine[s] that no action is required, provide[s] over-the-counter treatment, or refer[s] the patient to a medical services provider such as a nurse practitioner, physician assistant or physician."  In the majority of cases, the patient

---

[1]  Daniels also claimed that Defendant was deliberately indifferent in treating injuries Daniels suffered in a fall on August 14, 2013.  Plaintiff did not pursue this claim on appeal and we will focus on the facts pertinent to Defendant's diagnosis and treatment of Daniels's diabetes.

is referred to a mid-level provider – a nurse practitioner or physician assistant. "The physician is typically only scheduled in the most acute cases or when the mid-level provider believes a referral to the physician is necessary."

Daniels received medical treatment from the GCDC medical team for rheumatoid arthritis and chronic pain, including headaches, body aches, and pain in his joints, back, knees, elbows, hand, and shoulders. Following a reported slip and fall on August 14, 2013, Daniels received treatment for pain in his left hip and shoulder. Based on a nurse's examination, Defendant prescribed Tylenol and ordered x-rays, which came back normal. Over the next several weeks, a nurse practitioner provided follow-up care as Daniels reported at various times low back pain, headaches, shoulder pain, neck pain and hip pain from the reported fall. The nursing staff "noted drug seeking behavior" during this time.

On October 3, 2013, during another visit with a nurse practitioner for chronic neck and back pain, Daniels requested to see Defendant about his chronic pain and recurrent earache. As requested, Defendant evaluated Daniels on October 9, 2013, and Daniels reported severe headaches and other medical issues unrelated to this suit. On October 9, 2013, Defendant performed a physical examination, noted sinus tenderness to palpation, assessed Daniels with suspected sinus congestion leading to headaches, and prescribed medication. Defendant treated Daniels again for ear and back pain on October 22, 2013.

While treating Daniels for his pre-existing conditions and injuries from the reported fall, medical evidence that Daniels was diabetic developed.  At GCDC intake on October 11, 2012, Daniels did not report diabetes or problems with high blood sugar.  Nor did Daniels complain of any symptoms suggestive of diabetes, such as increased hunger, unexplained weight loss, excessive thirst or frequent urination before being diagnosed as diabetic in December 2013.  However, an October 25, 2013, lab report addressed to Defendant indicated Daniels's blood glucose level was 371 mg/dL.  That same report indicates that a previous result of 147 mg/dL was recorded in January 2013.

On November 19, 2013, a nurse practitioner again met with Daniels regarding his chronic pain.  The progress note for that visit included the note that "his Glucose has been high on last 2 blood draw HgbA1C added," indicating that a test for HgB A1C was added to a request for additional bloodwork.  A blood draw for HgB A1C level is used to help diagnose diabetes.

On December 9, 2013, the GCDC medical team collected a blood sample from Daniels.  A December 10, 2013, report of the results from that sample identifies "SCREENING HgB A1C 15.6 HI" under the heading "Clinical Abnormalities Summary."  When Dr. Jacobs reviewed the results of the lab work on December 17, 2013, he determined that the HgB A1C level of 15.6% was consistent with diabetes, called Daniels to health care to discuss the results,

5

examined Daniels, and prescribed a course of treatment for his new diagnosis of diabetes mellitus that included insulin and a diabetic diet.  The GCDC medical team monitored Daniels's blood sugar daily and administered insulin as prescribed. Within two weeks of diagnosis, Daniels reported that he was feeling better since the start of insulin.  Daniels's HgB A1C level dropped from over 15% when he was first diagnosed to approximately 9%.

## B.    Procedural History

On September 26, 2013, Daniels filed a *pro se* lawsuit against the GCDC and Defendant in the United States District Court for the Northern District of Georgia (Case No. 1:13-cv-03217-AT).  Daniels complained of inadequate medical care for the severe pain he suffered as a result of his August 14, 2013, slip and fall. The district court conducted a frivolity review, permitted the deliberate indifference claim against Defendant to proceed, and dismissed the claim against the GCDC.

Daniels subsequently obtained counsel and moved to amend the complaint. Daniels's proposed amended complaint added allegations against two nurses as additional Defendants, complained that Defendant was deliberately indifferent to Daniels's diabetes, and added two supplemental state law claims against Defendant for cruel and unusual punishment under the Georgia Constitution and negligence. The court found that Daniels's allegations against the nurses did not state a claim

6

and did not pass 28 U.S.C. § 1915A screening because Daniels: (1) did not allege that either nurse made any decisions to deny specific treatment to him or that they even had the power to do so; (2) did not raise any allegations as to either nurse in connection with the failure to treat him for diabetes; and (3) only alleged that any different treatment decisions that should have been made were asked of, and denied by, the supervising physician, Defendant. The court permitted the additional allegations against Defendant to proceed.

The court established a 4-month discovery period originally set to expire on August 14, 2015. On July 31, 2015, the parties jointly moved to extend discovery by three months, stating that Daniels was planning to hire an expert and would shortly produce an expert report. The court noted that "[t]he parties have requested an additional three months of discovery to accommodate anticipated discovery for experts only now being identified and hired, nearly two years into this case, nearly one year after counsel has appeared for Plaintiff, and 3.5 months into discovery." The court granted a 45-day extension of discovery and ordered that Daniels "produce all required discovery regarding its experts by August 21, 2015." Daniels did not identify an expert, much less produce an expert report.

On October 9, 2015, more than two months after the deadline for production of expert discovery, Daniels moved for voluntary dismissal without prejudice. Daniels explained that Defendant had asserted a defense of failure to exhaust under

7

the Prison Litigation Reform Act and that Defendant had "denied an admission which sought to determine whether Defendant was entitled to rely upon the Act when the plaintiff was no longer incarcerated but had filed while incarcerated." Daniels's counsel stated that "counsel in this case made [sic] effort to determine whether plaintiff had indeed exhausted his remedies and have finally determined that he did not, but it is unclear." Daniels maintained that "[g]iven the uncertainty of the law, plaintiff believes that the better course is to request this Court to allow him to voluntarily dismiss his complaint without prejudice and to refile under the Georgia renewal statute."

In response, Defendant waived and withdrew any exhaustion defense and argued that Daniels's motion for voluntary dismissal should be denied as moot. In reply, Daniels expressed his wish to voluntarily dismiss despite Defendant's withdrawal of his exhaustion defense, accusing Defendant of coming "perilously close to violation of F.R.C.P. 11" by withdrawing his exhaustion defense after "having insisted on this defense as late as answers to request for admissions filed August 14, 2015."

The Magistrate Judge issued a Report and Recommendation in which he stated "it is not clear to the Court what value a dismissal would serve for Plaintiff. The only benefit identified by Plaintiff is that dismissal and subsequent re-filing would allow him to avoid Defendant's exhaustion defense. But Defendant has

waived that defense." Nevertheless, the Magistrate Judge recommended that Daniels's motion to dismiss be granted, "subject to re-filing of the case in this same Court with an indication to the Clerk that it is to be assigned to the same judges as this case, and that any newly-filed case be deemed to incorporate the procedural history of this case." The Magistrate Judge explained that any re-filed action "will essentially resume at the point in which this case left off." The Magistrate Judge further recommended that "[t]he parties upon re-filing and service on Defendant should be required to contact the undersigned to arrange for a teleconference to discuss scheduling, including provision of a new deadline for filing of summary judgment motions." Daniels filed no objections to the Magistrate Judge's Report and Recommendation, and the district court adopted it. The court's order adopting the Magistrate Judge's recommendation reiterated the conditions of dismissal:

> Subject to re-filing of the case in this same Court with an indication to the Clerk that it is to be assigned to the same judges as this case, and that any newly-filed case be deemed to incorporate the procedural history of this case. Upon any such re-filing, the parties are required to contact Judge Anand to arrange for a teleconference to discuss scheduling, including provision of a new deadline for filing of summary judgment motions.

Plaintiff filed this renewal action on April 11, 2016. Plaintiff waited until September to serve Defendant who answered the complaint on September 21, 2016. After holding a scheduling teleconference, the court issued an order on

9

October 4, 2016, stating "that this case [is to] resume where the previous case left off, with the discovery period having closed." The court rejected Plaintiff's arguments that "because he is re-filing the case pursuant to the renewal statute, the schedule should start anew just like any newly filed case," noting that the renewal statute did not override the conditions of the dismissal order. The court ordered that dispositive motions be filed within 30 days.

On October 17, 2016, Plaintiff filed a self-styled amendment to his complaint. The amendment consisted of the sworn statement of Dr. Henry Fein, M.D., "a Board–Certified Physician in Internal Medicine and in Endocrinology, Metabolism and Diabetes"; his curriculum vitae; and supporting exhibits from Plaintiff's GCDC medical records. Defendant moved to strike Plaintiff's amended complaint and expert declaration. In response, Plaintiff argued that his amendment was timely as a matter of right under Federal Rule of Civil Procedure 15(a)(1). Plaintiff also explained his delay in providing expert discovery, stating that "[a]lthough counsel is reluctant to admit the same, neither Plaintiff (who proceeded *in forma pauperis*) or counsel had the money at the time to pay for an expert. There has been no reason to hurtle through this case as Defendant apparently wants to do."

Defendant filed a summary judgment motion on November 3, 2016. In response, Plaintiff filed another sworn statement from Dr. Fein, which "is to be

used in conjunction with [his] previous statement under penalty of perjury and supplements the same."

On May 31, 2017, the Magistrate Judge issued an Order and Final Report and Recommendation. The Magistrate Judge granted Defendant's motion to strike and excluded the original and supplemental statements of Dr. Fein. The Magistrate Judge explained:

> The history of this litigation counsels against accepting Plaintiff's proffer of an expert affidavit filed on October 17, 2016, more than one year after discovery closed in this case on September 30, 2015. It appears that Plaintiff deceived the Court as to the real motivation for his October 9, 2015 motion for voluntary dismissal of this action, using his *pro se* failure to exhaust administrative remedies — despite Defendant's willingness to waive the exhaustion defense — as a cover for his inability to retain an expert within the five and one-half month discovery period that closed on September 30, 2015. But Plaintiff never sought an extension of the discovery period for that purpose. He simply filed his expert's declarations without seeking permission from the Court to do so, and filed one of them *in response* to Defendant's summary judgment motion. He has not offered a substantial justification for doing so. Among other things, Plaintiff's failure to properly identify and produce discovery of his expert, unless the Court were to reopen discovery now, has denied Defendant the chance to depose that expert and/or to engage a contrary expert on the same topic. And to reopen discovery now, more than a year after discovery closed, is not warranted by any reason that Plaintiff has presented to the Court.

Order at 12–13, *Daniels v. Jacobs*, No. 1:16-cv-01164-AT.

The Magistrate Judge also recommended that Defendant's motion for summary judgment be granted, that Plaintiff's federal deliberate indifference claims be dismissed with prejudice, and that the court decline to exercise

11

supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice. The Magistrate Judge found that "[t]here is no genuine issue of material fact for trial as to whether Defendant, before December 17, 2013, was aware of facts from which the inference could be drawn that Plaintiff had diabetes, and also as to whether Defendant drew that inference." Having excluded Dr. Fein's statements, the Magistrate Judge also found that "Plaintiff simply has not demonstrated, with verifying medical evidence, that he suffered any adverse consequence from the delay, until December 17, 2013, in the diagnosis and treatment of his diabetes," a requirement to establish Plaintiff's deliberate indifference claim based on Defendant's failure to treat Plaintiff's diabetes.[2]

After conducting a de novo review, the District Judge overruled Plaintiff's objections, adopted the Magistrate Judge's Report and Recommendation, granted Defendant's motion for summary judgment, dismissed Plaintiff's federal deliberate indifference claims with prejudice, and dismissed Plaintiff's state law claims without prejudice. The District Judge found that "Plaintiff has not presented any record evidence disputing Defendant's factual assertion that he was not aware of Plaintiff's diabetes until December 17, 2013, an assertion that — unless properly disputed — entitles Defendant to summary judgment on Plaintiff's diabetes claim.

---

[2] The Magistrate Judge also recommended that Plaintiff's claims based on Defendant's deliberate indifference to Plaintiff's non-diabetes injuries be dismissed. Plaintiff did not object to this recommendation, which the district court adopted. Plaintiff grounds his appeal only his claims based on Defendant's deliberate indifference to Plaintiff's diabetes injury.

The deliberate indifference test does not ask whether Defendant *might have known* or possibly *should have known* of Plaintiff's diabetes earlier, but rather whether the record evidence supports a reasonable inference that Defendant *did know* and then ignored Plaintiff's condition." Having found that Plaintiff's claim failed on the subjective-knowledge prong of the deliberate indifference test, the court did not address the causation prong.

## II.    DISCUSSION

### A.    Standard of Review

We review a district court's grant of summary judgment *de novo*, considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party. *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Genuine disputes of fact exist when the evidence is such that a reasonable jury could render a verdict for the non-movant. *Melton*, 841 F.3d at 1219. Factual issues are considered genuine when they have a real basis in the record. *Id.* Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of his case, and on which he bears the burden of proof at trial. *Id*. "Inferences based on speculation and a 'mere scintilla of evidence in support of the

13

nonmoving party will not suffice to overcome a motion for summary judgment.'"

*Id.* (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)).

"The decision of whether to grant a voluntary dismissal pursuant to Rule

41(a)(2) . . . falls within the sound discretion of the district court.  Therefore, we

review the district court's decision to voluntarily dismiss the case for an abuse of

discretion." *Arias v. Cameron*, 776 F.3d 1262, 1268 (11th Cir. 2015).

## B.    The District Court Properly Excluded Dr. Fein's Sworn Statements

The district court did not abuse its discretion in imposing and enforcing the

procedural restrictions of Plaintiff's voluntary dismissal under Federal Rule of

Civil Procedure 41(a)(2).  "A district court enjoys broad discretion in determining

whether to allow a voluntary dismissal under Rule 41(a)(2)." *Arias*, 776 F.3d at

1268.  "The purpose of Rule 41(a)(2) 'is primarily to prevent voluntary dismissals

which unfairly affect the other side, and to permit the imposition of curative

conditions.'" *Id.* at 1268–69 (quoting *McCants v. Ford Motor Co., Inc.*, 781 F.2d

855, 856 (11th Cir. 1986) (citation and internal quotation marks omitted)).  "While

the district court 'should keep in mind the interests of the defendant, for Rule

41(a)(2) exists chiefly for protection of defendants,' the court should also weigh

the relevant equities and do justice between the parties in each case, imposing such

costs and attaching such conditions to the dismissal as are deemed appropriate."

14

*Id.* (quoting *Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d 1502, 1503 (11th Cir. 1991)).

The district court's dismissal with the condition that any subsequent action would be deemed to incorporate the procedural history of the original case did not constitute an abuse of discretion. At the time of dismissal, the original case had been pending for more than two years and the parties had completed a discovery period that had already been extended to permit Plaintiff to retain an expert and submit an expert report. The imposed conditions protected Defendant from the time, expense, and prejudice that would necessarily result if Plaintiff were permitted to relitigate the case anew. "The condition does nothing more than preserve, upon refiling, the *status quo ante.*" *Versa Prod., Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1329 (11th Cir. 2004) (holding that district court did not abuse its discretion in placing conditions on the voluntary dismissal that protected defendant from prejudice); *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1025 (7th Cir. 1991) (upholding the district court's order that expert testimony excluded in the original action could not be reintroduced in the refiled action); *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1276 (5th Cir. 1990) (noting with approval the district court's decision to condition a voluntary dismissal on the plaintiffs agreeing that they would not oppose the use of existing discovery in a subsequent suit).

15

The court's order imposing procedural conditions on any refiled case is not ambiguous, as Plaintiff contends. The Magistrate Judge stated that any newly-filed case would "incorporate the procedural history of this case" and that any re-filed action "will essentially resume at the point in which this case left off." At that point, discovery had closed and those statements reasonably informed Plaintiff that the court would not reopen discovery and permit submission of expert reports in any refiled action. Although Plaintiff's counsel now admits that his proffered reason for seeking a dismissal (i.e. exhaustion of remedies) was a subterfuge and that he sought dismissal to allow more time to retain an expert, he did not object to the Magistrate Judge's clearly expressed procedural conditions that would bar additional discovery in any refiled case. Nor did he object or seek reconsideration of the court's order adopting the Magistrate Judge's recommendations and reiterating that "any newly-filed case [would] be deemed to incorporate the procedural history of this case."

Plaintiff's arguments that "[t]here had been no order forbidding the use of expert testimony" and "[n]either Court gave plaintiff the option of refusing the condition" are not persuasive.[3] We agree with the Magistrate Judge that "it should

---

[3] The district court's order here does not suffer from the same flaws that undermined the dismissal orders in the cases cited by Plaintiff. For instance, the Sixth Circuit in *Duffy* was "troubled . . . by the district court's failure to give notice to the Duffys that it intended to condition the voluntary dismissal on retaining the law of the case in the refiled action" and found "the Duffys did not have a sufficient opportunity to contest the district court's decision or to withdraw their motion for voluntary dismissal if they did not wish to accept that condition."

16

have been clear to Plaintiff – after the parties received an extension of the

discovery period for the explicit purpose of designating experts and the extension

expired without any such designation – that upon the renewal of his original action,

he would not be allowed to make a belated expert disclosure without showing that

he was substantially justified in doing so."  Plaintiff made no such showing in

either the original or refiled actions.

Instead of showing that a belated expert disclosure was justified, Plaintiff

argued, as he does here, that "he had an absolute right" under Federal Rule of Civil

Procedure 15(a)(1)(A) to amend his complaint in the refiled action to include an

expert affidavit.  We disagree.  Plaintiff did not have an absolute right to

voluntarily dismiss the original action or subvert the court's procedural conditions

on dismissal.  Federal Rule of Civil Procedure 41(a)(2) permits voluntary dismissal

"only by court order, on terms that the court considers proper."  As explained, the

court's procedural conditions to dismissal were proper under the circumstances to

preserve the *status quo* and those conditions precluded additional discovery,

---

*Duffy v. Ford Motor Co.*, 218 F.3d 623, 633–34 (6th Cir. 2000).  That is not the case here where Plaintiff declined the opportunity to object to the Magistrate Judge's recommendation and argue that expert discovery should be permitted in any refiled action and chose instead to continue hiding his true motive for dismissal.  Nor does the order here suffer from the ambiguities that plagued the orders in the other cases cited by Plaintiff.  The court's order cannot reasonably be read as permitting the reopening of discovery and the submission of expert reports in any refiled action.

17

including the submission of expert reports, in any refiled action.  The district court did not err in striking Dr. Fein's statements.[4]

## C.    The District Court Properly Granted Summary Judgment

Plaintiff contends that the district court erred in finding that there is no record evidence from which to construe a genuine issue of material fact for trial on Plaintiff's diabetes claim.  "To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove:  (1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors."  *Melton*, 841 F.3d at 1220.  As we explained in *Melton*:

> The Eighth Amendment to the Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment that they receive while in prison.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).  The Supreme Court has interpreted the Eighth Amendment to prohibit "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).  As a pretrial detainee . . . , [Plaintiff's] rights arose under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment.  *Mann*, 588 F.3d at 1306.  Nonetheless, [Plaintiff's] claims are "subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment."  *Id.*  To prevail on a claim of

---

[4]  That Plaintiff filed this case as a "renewal action" ostensibly under O.C.G.A. § 9-2-61 does not alter the analysis as Plaintiff contends.  Georgia's renewal statue is a mechanism for allowing cases to be re-filed in certain circumstances notwithstanding the statute of limitations.  The renewal statute does not affect the conditions imposed by the district court on Plaintiff's voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2).

deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Id.* at 1306–07.

*Id.* The district court found that Plaintiff failed to establish a genuine issue of material fact with respect to the second requirement, Defendant's deliberate indifference to Daniels's diabetes. We agree.[5]

"A plaintiff claiming deliberate indifference to a serious medical need must prove: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Id.* at 1223. "Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). "Since a finding of deliberate indifference requires a finding of the defendant's subjective knowledge of the relevant risk, a genuine issue of material fact exists 'only if the record contains evidence, albeit circumstantial, of such subjective awareness.'" *Melton*, 841 F.3d at 1224 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation and internal quotation marks omitted)).

The record evidence construed in the light most favorable to Plaintiff does not establish that Defendant knew of Daniels's high blood glucose levels before diagnosis of his diabetes and treatment began on December 17, 2013. To rebut

---

[5] As did the district court, we assume for purposes of summary judgment that Daniels's had a serious medical need before being diagnosed and treated for diabetes on December 17, 2013.

Defendant's testimony that he did not know of Daniels's diabetes, Plaintiff argues that Defendant, as Daniels's treating physician, must have known of the lab results indicating that Daniels had diabetes sometime before his diagnosis. But the evidence merely establishes that nurses at GCDC were aware of Daniels's blood glucose results. "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew]." *Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (quoting *Burnette*, 533 F.3d at 1331 (citations omitted)).

The evidence is insufficient to support an inference that Defendant knew of Defendant's blood glucose test results before December 17, 2013. The undisputed evidence shows that GCDC nurses were qualified to provide medical treatment to patients**,** could order diagnostic testing, make diagnoses, and prescribe medications. Plaintiff also admits that Defendant "generally cared for patients housed in the infirmary [and] handled the more acute or complicated chronic care issues," while the nurse practitioners "handled routine chronic care and sick call appointments." Plaintiff further concedes that the GCDC nursing staff triages medical issues by urgency and that the physician is typically only scheduled in the most acute cases or when the mid-level provider believes a referral to the physician is necessary. Despite the nurse practitioner's central role in Daniels's medical

20

treatment, Plaintiff did not depose the nurses responsible for his care, much less obtain testimony supporting Plaintiff's contention that they must have informed Defendant of Daniels's blood glucose lab results before December 2013. Speculation that the nurses must have told Defendant about the high blood glucose results because they must have thought such high results warranted a physician referral is insufficient to create a genuine issue of material fact.

Nor can we infer that Defendant must have known about Daniels's blood glucose levels from the fact that Defendant saw and treated Daniels on several occasions in the fall of 2013. Defendant treated Daniels for pain on October 9, 2013, and October 23, 2013, before the October 25, 2013, lab results indicating a high glucose level were mailed. Thus, at that time, Daniels's medical file included only the blood work obtained in January 2013, showing a glucose level of only 147 mg/dL[6], much lower than the 371 mg/dL reported in the October 25, 2013, results that ultimately prompted the nurse practitioner to obtain a blood draw for HgB A1C level to check for diabetes. Although no contemporaneous record seems to reflect it, a possibility exists that Defendant also saw Daniels on or about November 22, 2013. That visit apparently also was for pain.

---

[6] Plaintiff asserts that Defendant "had been told as of January 2013 that plaintiff's blood sugar was 147." The record does not establish that anyone "told" Defendant about the January 2013 lab report. Moreover, the January 2013 lab report is addressed to a different doctor, Alaba Adeshigbin.

21

No reasonable jury could conclude based on the evidence of record that Defendant must have become aware of Daniels's blood glucose test results while treating him for pain, especially when it is undisputed that Daniels did not report any symptoms consistent with diabetes before his diagnosis, primary responsibility for screening lab results fell on the nurse practitioners, and Defendant relied on the nurse practitioners to alert him to serious conditions requiring his attention. Although the October 2013 lab report was addressed to Defendant, Defendant denies seeing it before diagnosing Daniels with diabetes, and the normal protocol called for nurse practitioners to screen lab reports and alert Defendant of the results only if needed. There must be more than a "mere scintilla of evidence" of Defendant's awareness of the test results to survive summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Melton*, 841 F.3d at 1224.

At best, Plaintiff has raised a genuine issue about whether Defendant should have been aware of Daniels glucose levels sooner by virtue of those results being in his medical file when Defendant treated him for pain. "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

22

Based on the evidence of record, no reasonable jury could conclude that Defendant had subjective knowledge of Daniels's diabetic condition before December 17, 2013. Plaintiff failed to establish that Defendant knew about a serious medical need and deliberately chose to ignore it. Without evidence to establish the subjective mental intent prong of deliberate indifference, Defendant is entitled to summary judgment.[7]

## III.    CONCLUSION

For the reasons explained above, we **AFFIRM** the decision of the district court granting Defendant's motion for summary judgment, dismissing Plaintiff's federal deliberate indifference claims with prejudice, and dismissing Plaintiff's state law claims without prejudice.[8]

---

[7] In passing, Plaintiff argues that "[a]lthough the defendant says everything was working . . . that is simply not true because the record from February 9, 2014 showed an 8.9% A1c." To the extent this argument suggests Defendant was deliberately indifferent to Daniels's diabetes following his diagnosis in December 2013, Plaintiff has failed to raise a genuine issue of material fact. While "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference," *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989), medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," *Nam Dang by & through Vina Dang,* 871 F.3d at 1280 (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted)). "'[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not support a claim of deliberate indifference." *Melton*, 841 F.3d at 1224 (quoting *Thigpen*, 941 F.2d at 1505). The record reflects that Defendant and his staff provided regular monitoring of Daniels's glucose levels and insulin treatment that succeeded in significantly lowering Defendant's blood glucose and HgB A1C level. Because the record does not establish a genuine dispute that Defendant failed to make a good-faith effort to treat Daniels's diabetes, summary judgment is appropriate.

[8] Plaintiff concedes that supplemental jurisdiction should not be exercised over the state law claims if summary judgment is affirmed or Dr. Fein's affidavits excluded.

23